FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Nov 30, 2014*
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL 13-00551 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| James A. Ericson, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff the United States of America's ("the Government") Motion for Summary Judgment ("Motion"), filed on September 18, 2014.  [Dkt. no. 25.]  Pro se Defendant James A. Ericson ("Ericson") filed his memorandum in opposition on October 27, 2014.  [Dkt. no. 38.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, the Government's Motion is HEREBY GRANTED IN PART for the reasons set forth below.

**BACKGROUND**

On October 23, 2013, the Government filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") to enjoin Ericson, a paid professional federal tax return

preparer, from preparing taxes.  The Complaint alleges that
Ericson has been a tax preparer for approximately thirty years,
and a sole proprietor of a tax business on Maui for nearly twenty
years.  It further alleges that, during that time, Ericson
engaged in fraudulent and deceptive conduct in that he: (1) took
unrealistic and unsustainable positions on customers' tax
returns; (2) willfully understated taxes due; and (3) recklessly
and intentionally disregarded tax rules and regulations.
[Complaint at ¶¶ 8-11.]

In essence, the Complaint alleges that, Ericson would
meet briefly with his customers – mostly middle- and low-income
wage earners – and ask them questions about work-related,
personal, and hobby expenses, and then, with little or no
documentation, claim unsupportable deductions based on fictitious
businesses and misrepresentations of personal expenses, which
would result in the understatement of their taxes due and, often,
tax refunds.  The Complaint alleges further that, in 2009, the
Internal Revenue Service ("IRS") assessed civil penalties of
$13,000 against Ericson for illegal tax preparation, pursuant to
26 U.S.C. § 6694(b), and informed him that his conduct was
improper, but that Ericson continued to file fraudulent returns.
[Id. at ¶¶ 13-22.]

The Complaint seeks injunctions pursuant to 26 U.S.C.
§ 7407 ("Count I") and 26 U.S.C. § 7402 ("Count II").

Specifically, the Government seeks the following relief: a permanent injunction prohibiting Ericson from acting as a federal tax return preparer, assisting in preparing fraudulent tax returns, violating the tax laws, and engaging in conduct that interferes with the proper administration and enforcement of the tax laws; an order requiring Ericson to contact all customers since January 1, 2008, and individuals involved in his business, to inform them of the permanent injunction; an order requiring Ericson to produce to the Government contact information for his customers since 2008; the retention of the Court's jurisdiction over this matter and permission for the Government to continue discovery to monitor and enforce the injunction; and an award of costs and all other appropriate relief. [Complaint at pgs. 16-20.]

## **STANDARD**

26 U.S.C. § 7407(b) provides that,

if the court finds –

(1) that a tax return preparer has –

(A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,

. . . , or

(D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and

> (2) that injunctive relief is appropriate to
> prevent the recurrence of such conduct,

> the court may enjoin such person from further
> engaging in such conduct.

26 U.S.C. § 6694(a) defines "[u]nderstatement due to unreasonable positions," and 26 U.S.C. § 6694(b) defines "[u]nderstatement due to willful or reckless conduct."[1]  The Ninth Circuit has explained that, "Section 6694 provides that a tax return preparer is subject to penalty if he prepares a return with understated liability due to an unreasonable position not supported by substantial authority."  United States v. Kapp, 564 F.3d 1103, 1109 (9th Cir. 2009) (citing I.R.C. § 6694).[2]

To prevail under § 7407(b)(1)(A), the Government must prove that, "(1) [the defendant] prepared a return that understated liability, (2) due to an unreasonable position, i.e., a position that objectively had a less than one in three chance of being sustained on the merits, and (3) an injunction is appropriate to prevent recurrence."  Kapp, 564 F.3d at 1109.  If a court finds that the tax return preparer has "continually or repeatedly" engaged in misconduct, and that "an injunction prohibiting such conduct would not be sufficient to prevent such

---

[1] Section 6695 refers to prohibited activities other than tax understatement, and is not at issue in this case.

[2] Courts and administrative regulations often refer to Section 26 of the United States Code as the "Internal Revenue Code" or "I.R.C."

4

person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax return preparer." § 7407(b).

26 U.S.C. § 7402 offers an alternative avenue for declaratory relief, and supplements § 7407. It provides that district courts, "at the instance of the United States shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."

## DISCUSSION

### I. Ericson's Opposition

The Government argues that Ericson should be permanently enjoined from preparing taxes because: (1) he has knowingly understated tax liabilities, in particular, by improperly deducting expenses for cell phone and internet use, "job hunting" and work-related travel, mileage on home-to-work commutes, and work clothes expenditures, all as unreimbursed employee expenses ("EBE") on customers' Schedules A (Itemized Deductions), and deducting expenses related to customer hobbies on customers' Schedules C (Profit or Loss from Business); (2) Ericson's positions are unreasonable; and (3) he has continually and repeatedly engaged in these violations over the years.

In his memorandum in opposition, Ericson neither denies

the general factual allegations regarding his business practices nor the law and regulations that he was required to follow in preparing his customers' tax returns.  Rather he contends that the Government misstates the evidence as to five of his customers, whom the Government profiles at length in its memorandum to "give a flavor of [Ericson's] flagrantly abusive conduct," [Mem. in Supp. of Motion at 4-10,] and denies that the IRS informed him what exactly he "was doing wrong" and claims that the IRS told him that they were "dropping the investigation."[3]  [Mem. in Opp. at 1-5.]

---

[3] Also, throughout his memorandum in opposition, Ericson argues that the Government engaged in improper conduct during the depositions of his customers, see, e.g., Mem. in Opp. at 5 ("Also [Government counsel] Mr. Hendon talks as if all hobby activities are illegal and he does not address U.S. Tax Code Section 183 that allows some deductions for hobbies.  He certainly did not advise my clients during deposition that some hobby deductions are allowed."), and blames the customers for misleading him, see, e.g., Mem. in Opp. at 1-2 ("We took $1,156 as a deduction for wine research.  Ms. Travis convinced me that she could provide proof of these payments and convinced me that she has certain responsibilities as Restaurant Manager.").  However, the former argument fails because Ericson does not raise any genuine issues of material fact as to the facts testified to in the depositions, instead focusing on what the Government might have omitted.  See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute . . . .").

The Court rejects the latter argument as well.  Although § 6694(a)(3) provides for an exception "if it is shown that there is reasonable cause for the understatement and the tax return preparer acted in good faith," in making that determination "the taxpayer's effort to assess the proper level of tax is of utmost
(continued...)

6

These arguments fail to raise a genuine issue of material fact for a number of reasons:

**A.  Ericsons's Admissions Regarding the Facts**

First, Ericson has already admitted the factual predicates for the elements of the claim, and he has not attempted to rebut the Government's concise statement of facts. After a July 11, 2014 hearing before the magistrate judge, at which Ericson was present, see Minutes, filed 7/11/14 (dkt. no. 21), the magistrate judge issued his Order Granting United States' Motion to Compel Discovery ("7/11/14 Order").[4] [Dkt. no. 22.]  In the 7/11/14 Order, he concluded that, *inter alia*, Ericson's "failure to provide any response to the United States' First Requests for Admission results in those requests for admission are admitted [sic] in this case[.]" [Id. at 2.]

According to that ruling, Ericson has admitted that: he has taken unrealistic and unsustainable positions on his customers' federal income tax returns; in preparing customer returns, he willfully understated tax due; he recklessly and intentionally disregarded tax rules and regulations; he

---

[3](...continued)
importance."  Rovakat, LLC v. Comm'r, 102 T.C.M. (CCH) 264 (T.C. 2011), *aff'd*, 529 F. App'x 124 (3d Cir. 2013) (citing Sec. 1.6664-4(b)(1), Income Tax Regs.).  Here there is ample indicia, described *infra*, that Ericson's reliance was not in good faith.

[4] The Government filed its Motion to Compel Discovery on June 10, 2014.  [Dkt. no. 15.]

improperly and purposefully reduced and understated tax
liabilities by fabricating business schedules, expenses and
income from non-existent businesses, by claiming false or
inflated credits, by deducting personal expenses which were not
legally deductible, and by deducting expenses related to
customers' jobs that did not qualify to be deducted as EBE on
Schedule A; the IRS informed him that his tax return preparation
was improper and illegal; and notwithstanding the IRS warning,
Ericson continued to prepare tax returns in the same improper and
illegal manner. [Government's Concise Statement of Material
Facts ("Govt. CSOF"), filed 9/18/14 (dkt. no. 25-2), Decl. of
Jeremy N. Hendon ("Hendon Decl."), Exh. 2 (United States' First
Requests for Admissions ("the RFAs")) at ¶¶ 3-11.]

Moreover, Ericson had a second opportunity to rebut
those facts, but failed to do so. In its CSOF, the Government
included similar facts and cited, in part, to the RFAs. <u>See,
e.g.</u>, Govt. CSOF at ¶¶ 11 ("Defendant improperly and purposefully
reduced and understated his customers' tax liabilities . . ."),
19 ("The Internal Revenue Service informed Defendant . . .").
However, Defendant did not file a responsive statement of facts,
and thus these facts are again deemed admitted. <u>See</u> Local Rule
LR56.1(g) ("For purposes of a motion for summary judgment,
material facts set forth in the moving party's concise statement
will be deemed admitted unless controverted by a separate concise

statement of the opposing party."). As a result, the Government
has provided undisputed evidence that Ericson prepared returns
that understated liability, and these understatements due to
unreasonable positions. Kapp, 564 F.3d at 1109.

**B.** **Ericson's Concession Regarding the Law**

Second, Ericson does not challenge the Government's
statement of the law, but rather argues – contrary to his
admissions – that he did not act in the way that the Government
claims. The Court here outlines the pertinent law, which the
Government substantively raised in its memorandum.

Regarding the purportedly impermissible deductions, 26
U.S.C. § 162 allows taxpayers to deduct "all the ordinary and
necessary expenses paid or incurred during the taxable year in
carrying on any trade or business." As the United States Tax
Court explained:

> An expense is "ordinary" if it is "normal, usual,
> or customary" in the taxpayer's trade or business.
> See Deputy v. du Pont, 308 U.S. 488, 495, 60 S.
> Ct. 363, 84 L. Ed. 416 (1940). An expense is
> "necessary" if it is "appropriate and helpful" in
> the taxpayer's business, but it need not be
> absolutely essential. Commissioner v. Tellier,
> 383 U.S. 687, 689, 86 S. Ct. 1118, 16 L. Ed. 2d
> 185 (1966) (citing Welch v. Helvering, 290 U.S.
> 111, 113, 54 S. Ct. 8, 78 L. Ed. 212 (1933)).
> Whether an expense is deductible pursuant to
> section 162 is a question of fact to be decided on
> the basis of all the relevant facts and
> circumstances. Cloud v. Commissioner, 97 T.C.
> 613, 618, 1991 WL 257963 (1991) (citing
> Commissioner v. Heininger, 320 U.S. 467, 473–475,
> 64 S. Ct. 249, 88 L. Ed. 171 (1943)).

A trade or business includes performing
services as an employee, and, thus, an employee
may deduct expenses that are ordinary and
necessary to his or her employment.  See Lucas v.
Commissioner, 79 T.C. 1, 6, 1982 WL 11121 (1982).

Noz v. Comm'r, 104 T.C.M. (CCH) 350 (T.C. 2012).  For certain

work-related items, such as travel, deductions may be allowed,

but only if additionally documented:

No deduction or credit shall be allowed –

(1) . . . for any traveling expense
(including meals and lodging while away from
home),

(2) for any item with respect to an activity
which is of a type generally considered to
constitute entertainment, amusement, or
recreation, or with respect to a facility
used in connection with such an activity,
. . .

unless the taxpayer substantiates by adequate
records or by sufficient evidence corroborating
the taxpayer's own statement (A) the amount of
such expense or other item, (B) the time and place
of the travel, entertainment, amusement,
recreation, . . . (C) the business purpose of the
expense or other item, and (D) the business
relationship to the taxpayer of persons
entertained . . . .

26 U.S.C. § 274(d).

Travel deductions have been further limited.  For

example, "when a trip consists of personal and business

activities the taxpayer may deduct the travel expenses only if

the trip is related primarily to the business purpose, which is a

facts and circumstances inquiry."  Schenker v. Comm'r, No.

5755-07S, 2009 WL 211485, at *9 (T.C. Jan. 29, 2009) (citing

10

Rudolph v. United States, 370 U.S. 269, 275–276 (1962)).  Thus,
to deduct "job hunting" trip expenses: the primary purpose of the
trip must be job hunting; only those expenses actually
attributable to job hunting may be deducted; and this allocation
must be documented.

Moreover, expenses for travel to and from work are non-
deductible: "'A taxpayer's cost of commuting or driving to work
is not a deductible business expense . . . but rather is a
non-deductible personal expenses[.]'"  Nat'l Treasury Emps. Union
(NTEU) v. Fed. Labor Relations Auth., 418 F.3d 1068, 1072 (9th
Cir. 2005) (alterations in NTEU) (some citations omitted)
(quoting Sanders v. Commissioner, 439 F.2d 296 (9th Cir. 1971)
(citing Commissioner v. Flowers, 326 U.S. 465, 66 S. Ct. 250, 90
L. Ed. 203 (1946))).

Regarding hobbies, "expenses from a trade or business
are not deductible unless the activity is engaged in primarily
for profit."  Prieto v. Comm'r, 59 F. App'x 999, 1000 (9th Cir.
2003) (citing 26 U.S.C. § 183(a); Wolf v. Comm'r, 4 F.3d 709, 713
(9th Cir. 1993)).  Further, the tax code provides for a cap on
deductions equal to the "gross income derived from such
activity[.]"  26 U.S.C. § 183(b)(2).  The Government argues, and
this Court agrees, that this law applies to this case, and thus
the question is whether Ericson's actions conform to these legal
requirements.  The Government argues that Ericson had a practice

11

of deducting work expenses that were: neither necessary nor ordinary to his customers' occupations; improperly documented; actually personal activities; and/or non-income generating hobbies. Ericson does not dispute these general contentions.

## C. **Ericson's Purported Evidence**

Third, even if the Court were to construe his memorandum in opposition as a response to the Government's CSOF, it does not conform to the requirements of a declaration in support of a memorandum. <u>See</u> <u>Welsh v. Wilcox Mem'l Hosp.</u>, Civil No. 12-00609 LEK-KSC, 2012 WL 6047745, at *1 (D. Hawai`i Dec. 4, 2012) ("Although pro se litigants are held to less stringent standards than those of their legal counterparts, a litigant's pro se status cannot excuse him from complying with the procedural or substantive rules of the court." (some citations omitted) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam); <u>Jackson v. Carey</u>, 353 F.3d 750, 757 (9th Cir. 2003))). Although Ericson signed his memorandum, he has neither sworn to its truthfulness, nor affixed the phrase "under penalty of perjury." Thus, it cannot be considered a "sworn affidavit in opposition to summary judgment" under Federal Rule of Civil Procedure 56 for the purpose of opposing the Government's CSOF. <u>See, e.g.</u>, <u>Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.</u>, 654 F. Supp. 2d 1073, 1083 (E.D. Cal. 2009) ("Although a lack of swearing is not a fatal defect, the declaration must be

made under penalty of perjury and must be attested to be true."
(some citations omitted) (citing 28 U.S.C. § 1746; <u>Kersting v.
United States</u>, 865 F. Supp. 669, 676-77 (D. Haw. 1994))).

Moreover, even if the Court was to consider Ericson's
memorandum as properly submitted evidence, it only attempts to
raise issues of genuine dispute as to the five customers he
discusses.  And the Court questions whether Ericson is successful
in raising disputes that are relevant and material to the
specific issues in the Motion even for those five customers.  For
instance, Ericson admits that he took deductions for things he
knew were not deductible and instead appears to dispute the
contention – not raised by the Government – that Ericson always
took impermissible deductions.

For example, with regard to customer Lynn Travis,
Ericson disputes whether Ms. Travis's Schedule A was entirely
fraudulent.  [Mem. in Opp. at 1-3.[5]]  However, he does not deny
that he took deductions for two luxury hotel stays and bills for
food and wine as work-related, when Mrs. Travis testified that
these trips and expenditures were not required or expected by her
employer.  [Hendon Decl., Exh. 3 (Excerpts of Trans. of 9/2/14
Depo. of Lynn Travis ("Travis Depo.")) at 52-54, 56-58.]
Similarly, Ericson does not deny writing off airfare for a trip

_____

[5] The Court focuses here on Ms. Travis because the issues
are illustrative and the majority of Ericson's five-page
opposition focuses on her returns.

13

to California as work-related, when Mrs. Travis testified it was purely for vacation. [Id. at 54-56, 58.] Thus, there is no genuine issue of material fact that, for example, Ericson misstated Mrs. Travis's tax liabilities by "deducting expenses relating to [her job] that do not qualify to be deducted as unreimbursed employee expenses on Schedule A." See Govt. CSOF at ¶ 11. Ericson's denials and interpretations of the evidence do not create genuine issues of material fact.[6]

## II.  **The Government's Evidence of Fraudulent Practices**

Even assuming there are factual disputes as to the five illustrative customers (and disregarding the evidence attached to the Hendon Declaration regarding them, such as their tax returns and declarations, Ericson's notes of his meetings with them, and their deposition testimony), the Government has provided sufficient evidence to show that – even viewed in the light most favorable to Ericson – there is no genuine dispute as to Ericson's generally unsupportable practices. See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013) (stating that, at summary judgment, the court "must determine, viewing the facts in the light most favorable to the nonmoving party, whether there

---

[6] Similarly, Ericson's statements regarding the other four customers do not create genuine issues of material fact as to whether Ericson understated their tax returns, since he simply argues that the Government has focused only on certain aspects of the customers' returns and that he was misled by the customers, which this Court has already rejected. See note 3, *supra*.

are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law" (citation and quotation marks omitted)); Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) ("A fact is material if it could affect the outcome of the suit under the governing substantive law.").

### A.   **The Flannery Declaration**

The Government provides the Declaration of Revenue Agent Sean Flannery ("Flannery Declaration"), who attests that the IRS initiated a Program Action Case ("PAC") in 2009 and audited eighty-two of Ericson's customers, nearly all of which resulted in the assessment of additional tax liabilities.  [Govt. CSOF, Flannery Decl. at ¶ 6.]  As a result, the IRS notified Ericson that his tax preparation practices were improper, fined him $13,000, and continued to investigate his practices.  [Id. at ¶¶ 7-8.]  While Ericson argues that the IRS "did not specify what [Ericson] was doing wrong," [Mem. in Opp. at 4,] he does not dispute that he was notified of wrongdoing and fined.  Nor can he dispute that he was under continued investigation, since that would not necessarily be within his personal knowledge.

Flannery also attests that, based on an analysis of 611 of Ericson's customers' returns between 2007 and 2012, the IRS found a shortfall of $2,412,212 in tax assessment, which amounts to over $30 million in revenue lost to the United States, and

that between eighty-six and ninety-two percent of Ericson's customers' returns resulted in refunds. [Flannery Decl. at ¶¶ 9-11.] Finally, Flannery attests that he analyzed the tax returns and found evidence that Ericson regularly claimed improper deductions, [id. at ¶¶ 12-13, 16-27,] as described more fully in the customer evidence that follows.

### B. Customer Evidence

The Government provides customer evidence regarding Ericson's fraudulent practices. Ericson would only meet briefly with his customers and focus largely on personal expenses, work-related expenses, and hobbies. See, e.g., Decl. of Steve T. Roan at ¶¶ 5-8 (meeting for fifteen minutes and discussing personal expenses, travel, wind surfing and surfing activities, and expenses associated with coaching youth soccer); Decl. of Kenton Detweiler at ¶¶ 6-8 (five to ten minutes, and discussing recreational fishing, his rent, cell phone bills, and computer and car expenses); Decl. of Michele Maalea at ¶¶ 5-6 (discussing mileage driving to work, uniform at work, and art and photography hobbies); Hendon Decl., Exhs. 7 (Excerpts of Trans. of 9/3/14 Depo. of John Livingstone) at 22-24 (discussing expenditures on clothes for work, dinner at restaurants, cell phone, cable, and golf balls), 8 (Excerpts of Trans. of 9/4/14 Depo. of Corey Brown at 38 (discussing hobbies and personal travel).

Ericson would then use this information to

impermissibly deduct certain expenses from his customers' tax liabilities. For instance, he would deduct payments for cell phones, internet, clothes, travel, and mileage to and from work from customers' Schedules A. [Govt. CSOF at ¶ 11 (comparing Ericson's notes with tax return entries regarding cable, internet, mileage to work, and "job hunting" trips with customer Schedules A and C).] Where customers used their personal cell phones and internet connection for work purposes, Ericson did not require customers to provide allocations or documentation. [Id. at ¶ 12 (citing Hendon Decl., Exh. 4 (Excerpts of Trans. of 9/3/14 Depo. of Julia Conlin ("Conlin Depo.")) at 46-47 (computer use), 60-62 (cell phone and internet)).]

The Government also offers evidence that Ericson would deduct expenses for personal trips as "job hunting" and thus work related, [id. at ¶ 13 (comparing notes with entries for "job hunting" with Schedules A and deposition testimony that the trips were for family reasons or vacation);] and fabricated businesses, using phony schedules [id. at ¶¶ 14-15 (citing declarations discussing volunteer youth soccer coaching, art and writing hobby, and recreational fishing]. None of this evidence is disputed or relies on the five customers discussed in Ericson's memorandum.

This customer evidence and the Flannery Declaration show that there is no genuine issue of material fact that Ericson

17

prepared returns that understated liability, and Ericson

repeatedly engaged in such conduct.  See 26 U.S.C. § 7407(b);

Kapp, 564 F.3d at 1109.  Further, based on the clearly

established law discussed above, these deductions were not based

on substantial authority.[7]  For all of the foregoing reasons –

that Ericson admitted the conduct, he does not dispute the law he

was required to apply, his evidence is improper and does not

raise a genuine issue as to his general practices, and the

Government's extensive evidence – there is no genuine issue of

material fact that Ericson has knowingly and repeatedly violated

the tax code.  The Court thus GRANTS summary judgment as to these

issues in favor of the Government.  The only issue that remains

is whether an injunction is appropriate and the scope of the

_____

[7] As Treasury Regulation 1.6662-4(d)(2) provides:

> The substantial authority standard is an objective
> standard involving an analysis of the law and
> application of the law to relevant facts.  The
> substantial authority standard is less stringent
> than the more likely than not standard (the
> standard that is met when there is a greater than
> 50-percent likelihood of the position being
> upheld), but more stringent than the reasonable
> basis standard . . . .  **The possibility that a
> return will not be audited or, if audited, that an
> item will not be raised on audit, is not relevant
> in determining whether the substantial authority
> standard (or the reasonable basis standard) is
> satisfied.**

(Emphasis added.)  Thus, Ericson's argument that, for
example, "[n]o auditor has ever discounted my work for such
a reason," [Mem. in Opp. at 3,] is unavailing.

injunction.

## III. **Remedy**

The Government must prove that an injunction is appropriate to prevent recurrence of the improper tax reporting. See 26 U.S.C. § 7407(b); Kapp, 564 F.3d at 1109. This district court has explained:

> When addressing likelihood of recurrence, courts, including the Ninth Circuit Court of Appeals, have looked to the following factors: 1) the gravity of the harm caused by the offense; 2) the extent of the defendant's participation and his degree of scienter; 3) the isolated or recurrent nature of the infraction; 4) the defendant's recognition or non-recognition of her own culpability; and 5) the likelihood that the defendant's customary business activities might again involve her in such transactions.

United States v. Moser, No. Civ.CV05-00262ACKBMK, 2005 WL 3277965, at *4 (D. Hawai`i Oct. 17, 2005) (some citations omitted) (citing United States v. Schiff, 379 F.3d 621, 625 (9th Cir. 2004)).[8]  The Court FINDS that, without an injunction, Ericson is likely to continue to engage in misconduct.  The undisputed evidence shows: the IRS examined 611 federal income tax returns of Ericson's customers from 2007 through 2012 and found a total tax shortfall of $2,412,212, which amounts to an average of $3,948 per return, and a loss of $30,052,176 in

---

[8] This citation refers to the magistrate judge's Findings and Recommendation to Grant Plaintiff's Motion for Default Judgment of Permanent Injunction Against Lou Ann Palermini Moser, which the district judge adopted on December 9, 2005.  2005 WL 3626934.

treasury revenue; in 2009, the IRS informed Ericson that his practices were improper and fined him; and Ericson continued to improperly deduct expenditures. [Govt. CSOF at ¶¶ 8-9, 19.] In his memorandum in opposition, Ericson continues to deny that he has done anything wrong, even in light of the evidence. These facts weigh in favor of an injunction according to the factors described in <u>Moser</u>. The Court would reach a similar conclusion under § 7402 since an injunction here is "necessary [and] appropriate for the enforcement of the internal revenue laws."

The Court therefore GRANTS the Motion insofar as the Government moves for a permanent injunction to stop Ericson from filing fraudulent tax returns. The Court, however, RESERVES ruling on the Motion insofar as the Government requests an injunction prohibiting Ericson from acting as a federal tax return preparer. While there may be sufficient evidence to support such a broad injunction, it is a drastic remedy, and since Ericson is pro se and has not had an opportunity to be heard on the issue in open court, this Court finds it prudent to set a hearing on the matter. The Court shall set that hearing and a briefing schedule on the permanent injunction in an entering order to follow this Order.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the Government's Motion for Summary Judgment, filed September 18, 2014, is HEREBY GRANTED

IN PART.  It is GRANTED insofar as the Court FINDS that: Ericson prepared returns that understated his customers' tax liabilities; his positions in filing those returns were unreasonable; and an injunction is appropriate and necessary to prevent recurrence and for enforcement of the internal revenue laws.  Further, it GRANTS the Motion insofar as it enjoins Ericson as follows.

Ericson, and all those in active concert or participation with him, are prohibited from:

(1) preparing or assisting in preparing or filing federal tax returns, amended returns, or other related documents or forms that they know, or reasonably should know, will result in an understatement of tax liability or the overstatement of federal tax refund(s);

(2) engaging in any other activity subject to penalty under 26 U.S.C. § 6694 or any other penalty provision in the Internal Revenue Code; and

(3) engaging in any conduct that substantially interferes with the proper administration and enforcement of the tax laws.

This injunction is effectively immediately.  The Court RESERVES ruling on all other aspects of the permanent injunction until it makes its ruling regarding the broader injunction after the hearing on that issue.  Thus, it RESERVES ruling on, *inter alia*, the Government's request for a permanent injunction

prohibiting Ericson from acting as a federal tax return preparer.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, November 30, 2014.



          /s/ Leslie E. Kobayashi
         Leslie E. Kobayashi
         United States District Judge

**UNITED STATES OF AMERICA V. JAMES A. ERICSON; CIVIL 13-00551 LEK-KSC; ORDER GRANTING IN PART THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**